IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ARNETTA GIRARDEAU,              )
                                )
              Plaintiff,        )
                                )
     v.                         )     1:24-cv-388
                                )
NORTH CAROLINA AGRICULTURAL     )
AND TECHNICAL STATE UNIVERSITY, )
                                )
              Defendant.        )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Arnetta Girardeau ("Plaintiff") filed a complaint on May 8, 2024, asserting claims for relief against North Carolina Agricultural & Technical State University ("Defendant" or "the University") stemming from her termination on August 23, 2022. (See generally Compl. (Doc. 1).) Before this court is Defendant's Motion to Dismiss, (Doc. 10). For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

**I.  BACKGROUND**

   **A.  Factual Allegations**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Ray v. Roane,

948 F.3d 222, 226 (4th Cir. 2020) (citation omitted). The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff was hired to serve as an associate general counsel at the University in January 2022. (Compl. (Doc. 1) ¶ 13.) During her time of employment, Plaintiff "suffered from a series of physical impairments including mobility issues related to knee pain, optic strain that limits her capacity to read small fonts, migraines, gastrointestinal issues, and signs of early hearing loss." (Id. ¶ 17.) She "has also been diagnosed with clinical depression and anxiety." (Id.)

Initially, Plaintiff was "permitted to work remotely three days a week and onsite two days." (Id. ¶ 16.) In addition, Plaintiff "sought and obtained a number of health-based accommodations during her first six months of employment."[1] (Id. ¶ 18.) "These accommodations were not documented" by the University and "were granted without any formal memorialization." (Id. ¶¶ 19-20.) "[I]n discussing her accommodations with [Sheena] Cobrand," the University's Deputy General Counsel and Plaintiff's "direct supervisor," Plaintiff "did not initially link any of her requests to mental health

---

[1] These accommodations included "permission to convert documents to 18-point font, the installation of ergonomic office furniture, built-in break time, and the latitude for occasional extension on work assignments." (Compl. (Doc. 1) ¶ 18.)

related diagnoses because she had heard disparaging and mocking comments from senior members of the legal department . . . about persons who suffer from mental health related impairments." (Id. ¶¶ 15, 21.)

In early August 2022, the University announced that "it intended to direct much of its senior level staff to return to full time in-office work since the Covid-19 pandemic had abated." (Id. ¶ 22.) Concerned that "reverting to a full time in-office routine would make it substantially more difficult to manage her medical limitations," Plaintiff initiated "her first formal application for accommodations" on August 3, 2022. (Id. ¶¶ 23-24.) Plaintiff submitted this application to Cobrand and Linda Mangum, the University's Director of Employee Relations. (Id. ¶ 24.)

In her application, Plaintiff applied for three new accommodations: "[A]pproval for a four-day remote work schedule, a second laptop, [and] the assignment of a staff member to assist with note taking during meetings." (Id. ¶ 25.) She also "sought to formalize" the accommodations that she had already been receiving. (Id.) Plaintiff's application identified "several specific conditions" such as "extreme knee joint pain, gastrointestinal illnesses, anxiety, eye strain, hand and wrist issues, and a ringing in the ears sensation that is a sign of

early hearing loss." (Id. ¶ 26.) Several days after submitting the application, on August 8, she disclosed in a meeting with Cobrand and Melissa Holloway, the University's General Counsel, "that she suffered from what she described as an 'invisible disability.'" (Id. ¶¶ 26, 28.)

On or around August 10, 2022, Plaintiff "suffered a panic attack" at a school event; the attack was "witnessed by several of her colleagues in the university's legal department." (Id. ¶ 27.) That evening, Plaintiff emailed Holloway requesting "full-time remote status on a short-term basis until Labor Day." (Id. ¶ 28.) "Holloway denied the request the next day with no follow-up inquiry or request for medical documentation." (Id.)

On August 12 and August 15, 2022, Plaintiff "was verbally admonished" by Holloway and Cobrand for two work-related incidents. (Id. ¶ 29.) In the first, Plaintiff "had difficulty recalling the details of negotiations with a company about a potential promotional contract with the university." (Id.) In the second, Plaintiff "had similar problems remembering whether she had completed a document review several days earlier." (Id.) Plaintiff acknowledges that at the time of these incidents, she "might have been having problems with immediate recall, concentration, or visualization of her own notes" and contends that these issues "aligned with her request for a note-taking

- 4 -

Case 1:24-cv-00388-WO-JEP   Document 17   Filed 04/11/25   Page 4 of 17

assistant." (Id. ¶ 30.) Plaintiff further contends that Holloway and Cobrand "chose to dismiss [her] issues with retaining information as signs of poor performance," and did not use the opportunity to inquire about Plaintiff's "health impairments." (Id.)

On August 18, 2022, Defendant notified Plaintiff that her August 3rd application for accommodations had been denied. (Id. ¶ 31.) The University provided "no analysis" and "little in the way of explanation" for this decision. (Id.) The next day, August 19, Plaintiff was issued a "written warning that her job performance had been unsatisfactory." (Id. ¶ 32.) Four days later, on August 23, Holloway notified Plaintiff "that she was being terminated." (Id. ¶ 33.)

### B. Procedural History

Plaintiff filed a complaint on May 8, 2024, asserting three claims for relief. First, Plaintiff asserts an ADA disability discrimination claim pursuant to 42 U.S.C. § 12112(a), alleging that Defendant terminated her because of her disability. (Compl. (Doc. 1) ¶¶ 37–43.) Second, Plaintiff asserts an ADA retaliation claim pursuant to 42 U.S.C. § 12203(a), alleging that Defendant retaliated against her for engaging in the protected activity of requesting reasonable accommodations. (Id. ¶¶ 44–48.) Third,

Plaintiff asserts a state law claim for "wrongful termination in violation of public policy." (Id. ¶¶ 49-53.)

On July 1, 2024, Defendant filed the operative Motion to Dismiss, (Doc. 10), and a memorandum in support of its motion, (see Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. 11)). In its memorandum, Defendant argues that Plaintiff's state law claim for "wrongful termination in violation of public policy" is barred by sovereign immunity. (Id. at 5-8.) Plaintiff filed a response brief conceding that her state law claim should be dismissed. (Pl.'s Mem. Br. in Opp'n to Mot. to Dismiss by Def. ("Pl.'s Resp.") (Doc. 14) at 2, 12-13.) Accordingly, this court will dismiss Plaintiff's third claim for relief - wrongful termination in violation of public policy.

Regarding the ADA claims, Defendant argues that Plaintiff has not plausibly alleged the elements of either claim and the

- 6 -

claims should therefore be dismissed pursuant to Rule 12(b)(6).[2] (Def.'s Mem. (Doc. 11) at 8–17.) Additionally, Defendant argues that even if the claims advance, Plaintiff "cannot recover punitive damages against [the University], a state entity." (Id. at 18–19; see also Compl. (Doc. 1) ¶¶ 43, 48, 53 (seeking punitive damages).) In her response brief, Plaintiff opposes Defendant's 12(b)(6) arguments, (Pl.'s Resp. (Doc. 14) at 5-12), but concedes that "the portions of the complaint demanding punitive damages are due to be dismissed for the reasons Defendant asserts in its pleading," (id. at 2 n.1). Accordingly, this court will dismiss the portions of Plaintiff's complaint seeking punitive damages.

Defendant's motion to dismiss Plaintiff's ADA disability discrimination claim (Claim I) and ADA retaliation claim (Claim II) pursuant to Rule 12(b)(6) remain for resolution.

---

[2] Defendant also argues that the ADA-retaliation claim should be dismissed because Plaintiff does not "request any recoverable relief," as she "only requests legal damages in her cause of action." (Def.'s Mem. (Doc. 11) at 17–18.) As Defendant notes in its briefing, ADA-retaliation plaintiffs are only "entitled to equitable remedies," not to "legal damages." See Israelitt v. Enter. Servs. LLC, 78 F.4th 647, 658–60 (4th Cir. 2023), cert. denied, 144 S. Ct. 1392 (2024). However, the Fourth Circuit recently clarified that "[b]ack pay and front pay are equitable remedies." See Duvall v. Novant Health, Inc., 95 F.4th 778, 793 (4th Cir. 2024). Here, Plaintiff seeks, among other things, back pay for her "lost wages." (Compl. (Doc. 1) ¶ 48.) Thus, it appears that Plaintiff has pleaded recoverable relief, but this court defers definitive resolution of this issue pursuant to Federal Rule of Civil Procedure 12(i).

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. See id. Further, this court "draw[s] all reasonable inferences in favor of the plaintiff." See M.P. by & through Pinckney v. Meta Platforms Inc., 127 F.4th 516, 522–23 (4th Cir. 2025). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III. ANALYSIS

#### A. Claim I: Disability Discrimination

"The ADA prohibits wrongful discharge as a form of disability discrimination. To state a claim for wrongful discharge, the plaintiff must allege that (1) [s]he was a qualified individual with a disability; (2) [s]he was discharged; (3) [s]he was fulfilling [her] employer's legitimate expectations at the time of discharge; and (4) the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination." Kelly v. Town of Abingdon, Va., 90 F.4th 158, 169 (4th Cir. 2024) (internal quotation marks and citation omitted).

Defendant does not challenge that Plaintiff has plausibly alleged the second element, that she "was discharged." (See generally Def.'s Mem. (Doc. 11).) Nor does Defendant challenge the portion of the first element requiring Plaintiff to plausibly allege that she suffered from an ADA-recognized disability. (See generally id.) However, Defendant argues that Plaintiff has not plausibly alleged another component of the first element: that she was a "qualified individual" for her employment. (See id. at 11-14; Def.'s Reply (Doc. 16) at 3-6.) Additionally, Defendant argues that Plaintiff has not plausibly

- 9 -

Case 1:24-cv-00388-WO-JEP   Document 17   Filed 04/11/25   Page 9 of 17

### III. ANALYSIS

#### A. Claim I: Disability Discrimination

"The ADA prohibits wrongful discharge as a form of disability discrimination. To state a claim for wrongful discharge, the plaintiff must allege that (1) [s]he was a qualified individual with a disability; (2) [s]he was discharged; (3) [s]he was fulfilling [her] employer's legitimate expectations at the time of discharge; and (4) the circumstances of [her] discharge raise a reasonable inference of unlawful discrimination." Kelly v. Town of Abingdon, Va., 90 F.4th 158, 169 (4th Cir. 2024) (internal quotation marks and citation omitted).

Defendant does not challenge that Plaintiff has plausibly alleged the second element, that she "was discharged." (See generally Def.'s Mem. (Doc. 11).) Nor does Defendant challenge the portion of the first element requiring Plaintiff to plausibly allege that she suffered from an ADA-recognized disability. (See generally id.) However, Defendant argues that Plaintiff has not plausibly alleged another component of the first element: that she was a "qualified individual" for her employment. (See id. at 11-14; Def.'s Reply (Doc. 16) at 3-6.) Additionally, Defendant argues that Plaintiff has not plausibly

alleged that that she was meeting Defendant's legitimate expectations, (see Def.'s Mem. (Doc. 11) at 14–15).

Because this court finds that Plaintiff failed to plausibly allege that she was "fulfilling [the University's] legitimate expectations at the time of discharge," see Kelly, 90 F.4th at 169, it need not address Defendant's other argument.

### i. **Plaintiff has not plausibly alleged that that she was meeting Defendant's legitimate expectations**

"To satisfy the third element, a plaintiff need not show that she was a perfect or model employee. Rather, a plaintiff must show only that she was qualified for the job and that she was meeting her employer's legitimate expectations." Cowgill v. First Data Techs., Inc., 41 F.4th 370, 380 (4th Cir. 2022) (cleaned up).

Plaintiff does not allege that she was meeting the University's legitimate expectations, nor does she allege facts which would allow this court to reach such a conclusion by reasonable inference. On the contrary, Plaintiff alleges she was the subject of two performance-related work incidents occurring on August 12 and 15, 2022, respectively, for which she was "verbally admonished" by her supervisors. (Compl. (Doc. 1) ¶ 29.) Plaintiff "acknowledge[s] that she had difficulty recalling the details of negotiations with a company about a potential

- 10 -

Case 1:24-cv-00388-WO-JEP   Document 17   Filed 04/11/25   Page 10 of 17

alleged that that she was meeting Defendant's legitimate expectations, (see Def.'s Mem. (Doc. 11) at 14–15).

Because this court finds that Plaintiff failed to plausibly allege that she was "fulfilling [the University's] legitimate expectations at the time of discharge," see Kelly, 90 F.4th at 169, it need not address Defendant's other argument.

### i. **Plaintiff has not plausibly alleged that that she was meeting Defendant's legitimate expectations**

"To satisfy the third element, a plaintiff need not show that she was a perfect or model employee. Rather, a plaintiff must show only that she was qualified for the job and that she was meeting her employer's legitimate expectations." Cowgill v. First Data Techs., Inc., 41 F.4th 370, 380 (4th Cir. 2022) (cleaned up).

Plaintiff does not allege that she was meeting the University's legitimate expectations, nor does she allege facts which would allow this court to reach such a conclusion by reasonable inference. On the contrary, Plaintiff alleges she was the subject of two performance-related work incidents occurring on August 12 and 15, 2022, respectively, for which she was "verbally admonished" by her supervisors. (Compl. (Doc. 1) ¶ 29.) Plaintiff "acknowledge[s] that she had difficulty recalling the details of negotiations with a company about a potential

promotional contract with the university" on the first occasion, and that she "had similar problems remembering whether she had completed a document review several days earlier" on the second. (Id.) Plaintiff also alleges that on August 19, she "was issued a written warning that her job performance had been unsatisfactory." (Id. ¶ 32.)

Plaintiff does not allege any counter-facts tending to show that she actually was meeting her employer's expectations in spite of the "verbal admonish[ments]" and "written warning," such as, for example, praise from her peers or supervisors, positive performance reviews, bonuses, raises, or other "recent signals suggest[ing] that the employer viewed her performance positively." See Cowgill, 41 F.4th at 380 (citing Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019)).

In her brief responding to Defendant's motion to dismiss, Plaintiff cites to Barbour v. Garland, 105 F.4th 579 (4th Cir. 2024), a case where the Fourth Circuit held that a district court "erred in ruling that [the plaintiff] pleaded herself out of court by acknowledging [the defendant's] proffered reasons" for an adverse employment action. Id. at 599. However, Barbour centers on a plaintiff's Title VII retaliation claim and specifically the issue of causality, where, at the 12(b)(6) stage, the plaintiff needed only to allege facts to "support a

plausible inference that the employer did not hire the plaintiff because of her protected activity." Id. at 590. In the ADA disability discrimination context, the Fourth Circuit expressly requires that a plaintiff allege "[s]he was fulfilling [her] employer's legitimate expectations at the time of discharge" (Kelly element three) in addition to alleging facts which provide for the "reasonable inference" that discrimination was a "but-for" cause of the discharge (Kelly element four). See Kelly, 90 F.4th at 169.

Therefore, even if Plaintiff has alleged facts which provide for the reasonable inference of discrimination – a question this court will not reach in this memorandum opinion – she has not plausibly alleged that she was fulfilling the University's legitimate expectations at the time of her discharge, a necessary requirement for asserting an ADA disability discrimination claim, see id., and thus her claim must fail. Cf. West v. City of Charlottesville, No. 3:24-CV-00027, 2025 WL 256998, at *9-10 (W.D. Va. Jan. 21, 2025) (slip copy) (dismissing a plaintiff's ADA wrongful discharge claim for failing to plausibly allege he was meeting his employer's legitimate expectations).

Accordingly, this court will dismiss Plaintiff's ADA disability discrimination claim.

### B. Claim II: Retaliation

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). Under this provision, an employee may not be terminated for engaging in ADA-protected activity such as requesting a reasonable accommodation for her disability. See Smith v. CSRA, 12 F.4th 396, 415–16 (4th Cir. 2021).[3] To survive 12(b)(6) motion, a plaintiff bringing an ADA retaliation claim must allege: "(1) that [she] engaged in protected conduct, (2) that [she] suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011).

Defendant does not challenge Plaintiff's pleading of the first two elements but argues that Plaintiff has failed to plausibly allege "that a causal link exists" between her request for accommodation and her discharge. (See Def.'s Mem. (Doc. 11) at 15–17.)

---

[3] Although the retaliation claim in Smith arose under the Rehabilitation Act and not the ADA, "[b]oth statutes 'require a plaintiff to demonstrate the same elements to establish liability.'" Smith, 12 F.4th at 410 n.4 (quoting Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012)).

- 13 -

### i. **Plaintiff has plausibly alleged a causal link**

A plaintiff demonstrates a causal link when she plausibly alleges that her engagement in an ADA-protected activity was a "but-for" cause of her termination. See Miller v. Md. Dep't of Nat. Res., 813 Fed. App'x 869, 877 (4th Cir. 2020) (citing Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 235 (4th Cir. 2016)). Even at summary judgment, establishing a causal link between a protected activity and discharge "is not an onerous burden" and requires "very little evidence." See Smith, 12 F.4th at 417 (citations omitted).

In her complaint, Plaintiff alleges she "initiated her first formal application for accommodations" to Mangum, the University's Director of Employee Relations, and Cobrand, Plaintiff's direct supervisor, on August 3, 2022, (see Compl. (Doc. 1) ¶ 24), made a follow-up request for short-term remote status by email to Holloway, the University's General Counsel, on August 10, (id. ¶¶ 27-28), and was discharged on August 23, (id. ¶ 33). Holloway notified Plaintiff of her discharge. (Id.)

It is reasonable to infer from these alleged facts that the same supervisors who were made aware of Plaintiff's request for ADA accommodations were the ones involved in the decision to terminate her. This inference, combined with the temporal proximity between Plaintiff's request and her termination, is

- 14 -

enough to plausibly allege a causal link. Cf. Smith, 12 F.4th at 420 (holding that plaintiff established a causal link at summary judgment where the evidence showed that the "decision-maker" was aware of the protected activity and took adverse action in close temporal proximity); see also Kelly, 90 F.4th at 170 ("In retaliation cases, temporal proximity suggests a correlation between an employee's protected action and his employer's adverse reaction." (citing Holloway v. Maryland, 32 F.4th 293, 300 (4th Cir. 2022))).

Defendant argues in its briefing that Plaintiff's two "performance related issues" on August 12 and 15 "defeat any suggestion that [Plaintiff's] request for accommodations was the but-for cause of her discontinuation and shows that [the University] had a legitimate, non-retaliatory reason to dismiss [her]." (Def.'s Mem. (Doc. 11) at 17.) However, for two reasons, Defendant's argument does not warrant dismissal of Plaintiff's claim at this stage. First, there can be multiple "but-for" causes of an employee's termination, see Gentry, 816 F.3d at 236 n.5, so even if Plaintiff's alleged performance issues played a role in her termination, this fact does not foreclose the possibility that her request for accommodations was also a "but-for" cause. Second, Defendant's argument that the University possessed a "legitimate, non-retaliatory reason" to terminate

Plaintiff, and that this should defeat Plaintiff's claim for retaliation, seeks to improperly impose on Plaintiff a requirement to plead rebuttals to the second step of the McDonnell Douglas burden-shifting framework at the 12(b)(6) stage. (See Def.'s Mem. (Doc. 11) at 16.) While Defendant's argument forecasts evidentiary issues for Plaintiff that may arise at summary judgment, at this stage, Plaintiff has stated a plausible claim for relief.

As such, Defendant's motion to dismiss Plaintiff's ADA retaliation claim will be denied.

## IV. CONCLUSION

Plaintiff has stated a plausible claim for relief for ADA retaliation (Claim II). (See supra Section III.B.) However, Plaintiff may seek only equitable remedies as to this claim. (See supra n.2.)

Plaintiff has failed to state a plausible claim for relief for ADA disability discrimination (Claim I). (See supra Section III.A.) Additionally, Plaintiff concedes that her claim for wrongful termination in violation of public policy, (Claim III), should be dismissed. (See supra Section I.B.) Finally, Plaintiff concedes that she is not entitled to seek punitive damages for any claim. (Id.)

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss, (Doc. 10), is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's first claim for relief, Disability Discrimination in Violation of the ADA, and Plaintiff's third claim for relief, Wrongful Termination in Violation of Public Policy. Claim I and Claim III are **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's second claim for relief, Retaliation in Violation of the ADA. Claim II, along with Plaintiff's request for equitable remedy, shall proceed.

This the 11th day of April, 2025.

_____
United States District Judge